UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**TIMOTHY S. DOUGLAS,**

      **Plaintiff,**

v.                                          **Case No:   6:13-cv-1943-Orl-40GJK**

**ZACHRY INDUSTRIAL, INC. and
ROBERT ALLEN SANDERS,**

      **Defendants.**

## ORDER

This cause is before the Court on Defendants' Motion for New Trial/Remittitur (Doc. 151), filed on October 13, 2015, and Plaintiff's Opposition in Response (Doc. 152), filed on October 16, 2015. Upon consideration, the Court denies Defendants' motion for new trial and for remittitur.

## I.  Background

On November 1, 2011, Defendant Robert Sanders, while acting within the course and scope of his employment, negligently operated the truck provided to him by Defendant Zachry Construction Corporation, causing a collision between Plaintiff Timothy Douglas' vehicle and the work-truck. (Doc. 4, ¶¶ 3-5). The parties stipulated that the accident occurred on US 1 near Clearview Drive, in Brevard County, Florida, and at the time of the collision it was daylight, the weather was clear, and the road was dry. (Doc. 59, ¶ 9). Defendants admitted liability at trial, and the case proceeded on the issues of causation and comparative fault. (*Id.* at ¶ 11). Plaintiff Douglas incurred $320,434.29 in medical expenses prior to the start of trial. (Exhibit 40).  Following a five-day jury trial, the jury found in favor of Plaintiff Douglas and awarded $6,560,000.00 in economic and

non-economic damages. (Doc. 142). The jury awarded $900,000.00 for lost earning capacity in the future. (*Id.*).

## II. Motion for New Trial—Exclusion of Texting Evidence

During the course of the trial, evidence was introduced showing that Plaintiff Douglas had received a text message at 08:59. (Exhibit 50). At the close of the evidence, the Plaintiff moved for judgment as a matter of law on the defense of comparative fault as relates to Defendants' contention that Plaintiff may have been reading a text message at or shortly before the time of the accident. Following argument, the Court found that the Defendants failed to present competent evidence that Plaintiff had been distracted by a text message at or immediately prior to the collision or that the alleged receipt of a text message was a proximate cause of his injuries. *See Borenstein v. Raskin*, 401 So.2d 884 (Fla. 3d DCA 1981); *Riegel v. Beilan*, 788 So.2d 990 (Fla. 2d DCA 2000). Accordingly, the Court granted the Plaintiff's motion for judgment as a matter of law as to the defense that Plaintiff had received a text message and that the receipt of the text message caused or contributed to the subject accident.

### A. Evidence Regarding Receipt of a Text Message

The Florida Traffic Crash Report reflects that the accident was reported at 08:58 and the trooper was dispatched at 09:00. (Exhibit 1). Records of the Brevard County Fire Rescue showed that a call regarding the accident was received at 08:57 with the accident reported as occurring at 08:56. (Exhibit 5). Emergency personnel were dispatched at 08:57 and departed the station at 08:58, arriving on scene at 09:03, and they reached the patient, Plaintiff Douglas, at 09:04. (*Id.*). AT&T telephone records showed the Plaintiff's wife sent the Plaintiff a text message at 08:59, three minutes after the accident. (Exhibit 50). Plaintiff Douglas testified that he did not receive the text message prior to the crash,

and his wife testified that Plaintiff did not respond to the text message. The Defendants did not offer cellular records showing Plaintiff had responded to the text message to contradict this testimony.

The Defendants argued, in opposition to Plaintiff's motion for judgment as a matter of law, that the records from the Highway Patrol, or the records of the Brevard County Fire Rescue, or the records produced by AT&T could be in error. The Defendants submitted that they should be permitted to argue to the jury that the text message had been received prior to the collision, distracting the Plaintiff and contributing to the accident. The Defendants therefore asserted that they should be permitted to urge the jury to infer the following: (1) that the records of either AT&T or the Highway Patrol or the Brevard County Fire Rescue, or all of them, are incorrect, (2) that the text message—documented as having been received at 08:59 was being read by the Plaintiff, and (3) that Plaintiff's negligence in reading the text message caused or contributed to the accident. In short, the Defendants urged the Court to permit them to encourage the jury to disregard the uncontroverted evidence, speculate as to facts not in evidence regarding the accuracy of the various records and the times reflected in the official records, speculate that Plaintiff read the text message—contrary to Plaintiff's sworn testimony that he had not received the text prior to the collision—and further speculate that Plaintiff's negligence caused or contributed to the accident. The Court declined Defendants' request to misdirect the jury in this manner.

Additionally, the Court observed in granting Plaintiff's motion that the expert testimony offered at trial defeated any potential causal link between the hypothetical scenario wherein Plaintiff Douglas read the text message and the cause of the collision. Plaintiff called Dr. Elliot Stern to testify regarding the reconstruction of this accident. Dr.

3

Stern earned his Bachelors of Science, Masters of Science, and Doctorate in mechanical engineering, formerly worked for General Motors in vehicle dynamics and crash analysis and taught at Auburn. Dr. Stern is eminently qualified to render opinions concerning vehicle dynamics and accident reconstruction, a fact which was not lost on the Defendants when they stipulated to his expertise. Dr. Stern testified on a number of issues, including that Plaintiff had been traveling between 57.1 and 61.4 miles per hour prior to Defendant Sanders' illegally pulling into Plaintiff's lane of travel. Dr. Stern opined that Plaintiff required between 1.5 to 2 seconds from the time he perceived Defendant Sanders entering his lane of travel before Plaintiff could begin to react to the threat. This evidence was uncontroverted even though Defendant's also called an expert in accident reconstruction. Dr. Stern opined that it was impossible for Plaintiff to take evasive measures between the time he would have perceived the threat of a vehicle illegally turning right and entering Plaintiff's lane of travel and impact.[1]

### B. Analysis

Rule 50(a), Federal Rules of Civil Procedure, provides, in pertinent part:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> . . .
>
> (B)   grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

---

[1] At the point of the collision, US 1 is a four-lane divided highway with the northbound and southbound lanes consisting of two lanes, an inside (or right) and an outside (or left) lane. Defendant Sanders was required when turning right onto southbound US 1 to enter the inside, or right lane, but he illegally entered the outside, or left lane. Plaintiff was legally traveling south on US 1 in the outside, or left, lane.

Although we look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997) (citations omitted). A substantial conflict in the evidence is required before a matter will be sent to the jury. *Id.* A "motion for judgment as a matter of law will be denied only if 'reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.'" *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc).

The record, viewing the evidence in the light most favorable to the Defendants, does not create a substantial conflict in the evidence. To the contrary, the uncontroverted evidence establishes that the text message was received after the collision. The Defendants did not call a witness from the Florida Highway Patrol, Brevard County Fire Rescue, or AT&T to establish that the times set forth in the relevant documents could be in error. The only evidence presented to the Court and to the jury was that the text message occurred after the accident. The Defendants in this instance failed to submit even a scintilla of evidence to the contrary and simply sought to encourage the jury to speculate and to disregard the facts, which is improper. Moreover, even if one were to assume the text message arrived prior to the accident, there is literally no evidence to support the proposition that Plaintiff read the text message. Finally, even if Plaintiff read the text message, the evidence is clear that Plaintiff lacked sufficient reaction time to avoid Defendant Sanders once Defendant Sanders illegally, and without warning, entered into Plaintiff's lane of travel. Therefore, the Court denies Defendants' motion for new trial.

### III. Motion for Remittitur or, alternatively, New Trial

As set forth in Section I of this opinion, the jury awarded Plaintiff $900,000.00 in

lost future earnings. Mr. Harold Bialsky, Plaintiff's expert witness in the area of life care planning and vocational evaluations, testified regarding Plaintiff Douglas' post-accident earning capacity. Mr. Bialsky testified that the Plaintiff's post-accident earning capacity is $225 per week, down from a pre-accident earning capacity of $400 per week. Dr. Fred Raffa, Plaintiff's economist, testified that if Plaintiff continues to work at the current rate and number of hours, and factoring in the normal growth in the industry of 2.15%, reduced to current value, Plaintiff requires $458,898.00 to compensate him fully.[2] Defendants submit that the jury verdict of $900,000.00—slightly less than twice the amount suggested by Dr. Raffa—exceeds the amount established by the evidence. The Court disagrees.

In addition to the testimony concerning Plaintiff's post-accident earning capacity, the jury heard evidence from a variety of sources depicting Plaintiff as suffering from a number of emotional, cognitive, and physical limitations. The jury heard testimony that Plaintiff's employer has provided what is commonly known as "sheltered" employment. Mr. Bialsky explained to the jury that sheltered employment is clearly at play in this case, because Plaintiff is unable to perform many tasks required of his colleagues, and the evidence support the jury's conclusion that Plaintiff's employer was accommodating the Plaintiff by exempting him from many tasks required of co-workers. Furthermore, Plaintiff's expert, Mr. Bialsky, testified that Plaintiff's job skills are so minimal that he cannot find another job if he were to lose his current employment. Finally, there was testimony indicating that Cocoa Tires, Plaintiff's employer, was closing the store one day a week due to a decrease in business, indicating the Plaintiff's employment was not secure.

---

[2] Plaintiff was 25 years old at the time of the accident and 28 years old by the time of trial.

6

Plaintiff's mother, Tammy Douglas, testified that her son's personality has changed since the accident. She testified that her son is depressed due to his inability to work full time and that he is easily angered. Ms. Crystal Douglas, Plaintiff's wife, testified that working even 20 hours per week, and performing light duties, takes a terrible physical toll on her husband. Ms. Douglas described how her husband is in pain when he wakes in the morning and by the end of the day he eats dinner, takes medicine and goes to bed. She further stated that her husband's personality has changed, describing his memory as poor, and noting that he has lost his confidence and is easily angered and depressed. Dr. Bloom, Plaintiff's pain management doctor, confirmed that Plaintiff's memory is poor. Dr. Danziger, a board certified psychiatrist, diagnosed Plaintiff with major depressive disorder since the accident. Finally, Dr. Snyder, a physical medicine and rehabilitation specialist, testified that Plaintiff will be required to use a scooter by age 45 for mobility, will find his community activities increasingly limited due to difficulty with mobility, and will require modifications to his home and a van to accommodate his decreased mobility.

### A.    Analysis

It is well-established that a "federal court has no general authority to reduce the amount of a jury's verdict. The Seventh Amendment prohibits re-examination of a jury's determination of the facts, which includes its assessment of the extent of plaintiff's injury." *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999). However, a district court may order a new trial, when the court finds a jury's award of damages is excessive. *Id.* Defendants correctly note that Florida law applies when determining whether the amount awarded is clearly excessive. The Court is directed, pursuant to § 768.043(2), Fla.Stat. (1993), to consider the following factors:

> (a) whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact; (b)

> whether it clearly appears that the trier of fact ignored the evidence in reaching the verdict or misconceived the merits of the case relating to the amounts of damages recoverable; (c) whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation or conjecture; (d) whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered, and (e) whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons. *Aircraft Service Intern Inc. v. Jackson*, 768 So.2d 1094, 1095-96 (Fla. 3d DCA 1995)

It is equally clear that the jury is not bound by the testimony of an expert witness in determining the amount of economic damages to award in a given case. *Parrish v. City of Orlando,* 53 So.3d 1199 (Fla. 5th DCA 2011) (A jury is free to accept or reject an expert's testimony or to give it such weight as it deserves).

After considering the factors set forth in § 768.043(2), Fla.Stat., the Court finds that the jury could properly determine that the appropriate measure of damages for loss of future earnings is $900,000.00. That is, the jury heard competent evidence regarding the Plaintiff's physical, emotional, and cognitive injuries in conjunction with evidence that Plaintiff is incapable of procuring equivalent work in the event his sheltered employment comes to an end. Therefore, the jury could, and apparently did, conclude that awarding $458,898.00 as compensation for a 50% reduction in earning capacity was inadequate. Stated differently, the jury was presented with sufficient evidence to conclude that Plaintiff is more likely than not going to become unemployable, justifying an award of $900,000.00 which figure represents the replacement of his total earning capacity. As such, the award of damages for loss of future earnings is supported by the evidence and is adduced in a logical manner. The award of $900,000.00 represents an amount that is slightly less than the total loss of Plaintiff's future earning capacity. Had the jury awarded an amount in excess of $917,796.00—which represents complete loss of future earning capacity—the

Court would have a basis for concluding that the award is unsupported by the record. However, the record support's the jury's award of economic damages and will not be disturbed. Accordingly, the Court denies Defendant's motion for remittitur.

## IV. Conclusion

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for New Trial based upon the Court's order granting Plaintiff's motion for judgment as a matter of law on the issue of texting (comparative fault) (Doc. 150) is **DENIED**.

2. Defendants' Motion for Remittitur is **DENIED**.

**DONE AND ORDERED** at Orlando, Florida this 22th day of October, 2015.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record

9